IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terry Douglas Campbell, # 281286, )<br>)<br>      Plaintiff, )<br>)<br>  vs. )<br>)<br>Chuck Wright, *Sheriff*; )<br>Neil Urch, *Deputy*; )<br>J. Hudson, *Deputy*; )<br>J. Parris, *Deputy*; )<br>Nurse Jane Doe; )<br>Chief Parris, *aka Moe Poe*; )<br>Michael Sean Nix, *aka Po Poe;* and )<br>Dr. Sal Bianco, *aka John Doe*; )<br>)<br>)<br>      Defendants. )<br>            ) | Civil Action No. 6:14-1832-BHH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

    The plaintiff is currently an inmate at the South Carolina Department of Corrections. He alleges that the defendants, six Spartanburg County law enforcement officers and two medical employees at the county detention center, violated his constitutional rights when he came into their custody as a pretrial detainee.

    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

    The defendants filed a motion for summary judgment (doc. 56) on August 27, 2014. The next day the undersigned issued a *Roseboro* (doc. 58) order to apprise the plaintiff of summary judgment procedure, as required by *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). The plaintiff filed a response on October 27th (doc. 89). The defendants thereafter filed a reply (doc. 95), to which the plaintiff filed a surreply (doc. 96).

On October 8, 2014, the undersigned granted the plaintiff's motion to amend his complaint to substitute Dr. Sal Bianco for defendant John Doe, Chief Parris for defendant Poe Moe, and Michael Sean Nix for defendant Po Poe and denied the motion in all other respects (doc. 86).

The plaintiff claims he was falsely arrested in November 2011, when deputies broke into his home to arrest him. He further alleges that after a second arrest in May 2012, his car was towed and items were taken from the car. He also claims that while in custody at the Spartanburg County Detention Center, he fell and sustained injuries, and that the medical care he received there was inadequate. He further alleges that while detained at the detention center, he was exposed to leaking drains, mold in duct work, inoperable fire alarms, uncovered light fixtures, and a crack in a shower floor (doc. 1).

In their memorandum in support of summary judgment (doc. 56-1), the defendants argue the plaintiff's allegations do not amount to constitutional violations for which relief can be granted. They contend the plaintiff was not falsely arrested on either occasion and that the plaintiff's personal property obtained during his May 2012 arrest has already been returned. Regarding the poor conditions at the detention center cited by the plaintiff, the defendants argue that the plaintiff's short-term exposure to these conditions does not state a constitutional claim and that repairs have been made. They also deny the plaintiff's allegations of their deliberate indifferent to his medical needs. Filed with their motion for summary judgment are copies of the applicable arrest warrants and related documents, maintenance logs for the detention center, and relevant medical reports.

In his response opposing summary judgment, the plaintiff disputes that all of his personal property was returned to him. He also describes a water or sewage leak in the detention center that lasted for five months, creating a wet floor on which he slipped. He argues that the defendants are responsible for his fall and that they ignored his complaints of pain and failed to provide him with follow-up medical care.

2

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism

for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### *False Arrest*

The plaintiff raises false arrest claims with respect to his arrest on November 20, 2011, and his arrest on May 19, 2012. In the complaint, the plaintiff discloses that his arrest on November 20, 2011, was made pursuant to an arrest warrant. Copies of the two arrest warrants (one for burglary and the other for grand larceny), which were signed on November 17, 2011, by Magistrate Roberto M. Inclan, are attached as an exhibit to the defendants' motion for summary judgment (doc. 56-2 at 2–3). The plaintiff's arrest during a traffic stop on May 19, 2012, was made on the basis of two outstanding arrest warrants signed by Magistrate William Robby Chumley on May 2, 2012 (doc. 56-6 at 2–3).

To state a cognizable § 1983 claim for false arrest, a plaintiff must claim an arrest was made without an arrest warrant. *See Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) ("a claim for false arrest may be considered only when no arrest warrant has been obtained"); and *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181-82 (4th Cir. 1996) (when the arresting official makes the arrest with a facially valid warrant, it is not false arrest). Hence, the plaintiff's false arrest claims fail because he was arrested pursuant to arrest warrants. Moreover, the plaintiff's indictments for burglary and grand larceny are affirmative evidence of probable cause sufficient to defeat claims for malicious prosecution and false arrest under § 1983. *See Provet v. South Carolina*, Civil Action No. 6:07-1094-GRA-WMC, 2007 WL 1847849, at *5 (D.S.C. June 25, 2007). Also, as noted by counsel for the defendants, the plaintiff was convicted of burglary and grand larceny. As a result, any constitutional claims pertaining to the criminal case are barred by the holding in *Heck v. Humphey*, 512 U.S. 477 (1994), because a right of action has not accrued.

4

*Lost Property*

When the plaintiff was arrested during a traffic stop on May 19, 2012, his motor vehicle was impounded by the Spartanburg County Sheriff's Department (doc. 56-6 at 4–15). Items contained in the motor vehicle were inventoried (doc. 56-6 at 13–15). The plaintiff was not able to provide proof of ownership of those items (*id*. at 14).

Deprivations of personal property, including negligent deprivations of personal property, do not support an action for damages under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 & n. 3 (1986). In *Daniels v. Williams*, the Supreme Court overruled its earlier holding in *Parratt v. Taylor*, 451 U.S. 527 (1981), that negligent deprivations of property implicate due process interests. Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. In other words, "[t]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv*s., 489 U.S. 189, 200–03 (1989).

The United States Court of Appeals for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property, even if the deprivation was caused by an employee of the state, a state agency, or a political subdivision of a state. *Yates v. Jamison*, 782 F.2d 1182, 1183–84 (4th Cir. 1986). The plaintiff has available state law remedies to recover any lost property. *See* S.C. Code Ann. 15-69-10 *et seq.*; and S.C. Code Ann. § 15-78-10 *et seq.* (Westlaw 2015). Hence, the loss of the plaintiff's personal property is not a basis for a federal civil rights action pursuant to 42 U.S.C. § 1983. *See Treece v. Winston-Wood*, Civil Action No. 3:10-2354-DCN-JRM, 2012 WL 887476, at *6 (D.S.C. Feb. 23, 2012), *adopted by* 2012 WL 896360 (D.S.C. Mar. 15, 2012).

Based upon the foregoing, summary judgment should be granted on this cause of action.

*Medical Care*

The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs. The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee."). Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). With regard to the objective component, a medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity

6

for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Plaintiffs must also show the subjective component-deliberate indifference. An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence or malpractice does not violate the Eighth Amendment. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

In determining whether a prison official is deliberately indifferent to a prisoner's serious medical needs, the court may generally rely on medical records concerning examination and treatment of the prisoner. *Bennett v. Reed*, 534 F.Supp. 83, 87 (E.D. N.C. 1981). *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.")

The affidavit (doc. 57) of Katherine White, Medical Administrator of the Spartanburg County Detention Center, and the plaintiff's medical records disclose that the defendants have not been deliberately indifferent to the plaintiff's serious medical needs. The plaintiff was able to purchase over-the-counter pain relief medications with respect to his complaints of headaches on May 24, 2012, and for lower back pain on June 14, 2012 (doc. 57-1 at 1). Significantly, the plaintiff on May 19, 2012, completed a Medical Receiving Screening Form upon his admission to the detention center (doc. 60 at 2). Although the plaintiff indicated that he had heart problems and stomach problems, he was not under a physician's care at the time of his admission to the detention center (*id.*). Five days later (May 24, 2012), after the plaintiff complained of anxiety and bad headaches, the plaintiff

7

was examined by detention center medical staff on an "emergency" basis (*id*. at 6). In light of the plaintiff's prior use of illegal drugs (*id*. at 5), the plaintiff on May 25, 2012, was prescribed Motrin and "Vistaril" for five days (*id*. at 7).

The medical records indicate that during the summer of 2012, the plaintiff complained of hemorrhoids, headaches, intolerance to cheese, worries about a brain tumor, anxiety, "duodensity" [*sic*], and his need for mental health treatment (*id*. at 8–18). On June 18, 2012, the plaintiff was authorized to receive "no[n] dairy" snacks (*id*. at 23) and was given suppositories for his hemorrhoids (*id*. at 25). With respect to mental health issues, the plaintiff was authorized to be placed on the list for treatment at the Spartanburg Mental Health Center (*id*. at 29).

The plaintiff was promptly treated for his slip and fall in September 2012. When the plaintiff was discovered lying on the floor next to a commode, detention center personnel transported the plaintiff to Spartanburg Regional Medical Center on September 3, 2012 (*id*. at 29). Although the plaintiff experienced headaches and neck pain after the slip and fall (*id*. at 33), he was prescribed Paxil, Prilosec, Naprosyn, "Preparation H," and Anusol for his various ailments (*id*. at 36, 50–52). In fact, one of the plaintiff's own exhibits indicates that on September 6, 2012, after her filed a request slip for medical attention, detention center personnel on September 7, 2012, entered the following notation: "MD to advise" (doc. 89-15 at 3). The exhibits and one affidavit indicate that medical personnel examined the plaintiff on September 10, 2012, and that the plaintiff was prescribed anti-inflammatory pain medication for ten days (*id*. at 6; doc. 57 at 2; doc. 89-7 at 3). The plaintiff also was prescribed two different types of suppositories in October 2012 to treat his hemorrhoids (doc. 60 at 49, 52).

Based upon the foregoing, the undersigned finds that the plaintiff has failed to present evidence sufficient to state a claim for deliberate indifference to serious medical needs pursuant to the Fourteenth Amendment.

*Detention Center Conditions*

In response to the plaintiff's allegations concerning unsafe or hazardous conditions at the Spartanburg County Detention Center, the defendants have submitted maintenance logs for the period during which the plaintiff was incarcerated there. Even the plaintiff appears to acknowledge that repairs were made, but he complains that his short-term exposure to leaking drains, mold in duct work, inoperable fire alarms, uncovered light fixtures, and a crack in a shower floor constituted a constitutional violation.

Since the plaintiff was a pretrial detainee during the relevant time in this case, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment. Under *Bell v. Wolfish*, a pretrial detainee faces a lighter burden to show a constitutional violation than under the Eighth Amendment. 441 U.S. 520, 537 n.16 (1979) (due process requires that a pretrial detainee not be punished; the Eighth Amendment requires that the punishment imposed not be cruel and unusual). But, as a practical matter, courts do not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's Section 1983 claim. *See Hill v. Nicodemus*, 979 F.2d 987, 990–92 (4th Cir. 1992).

"[N]ot every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill*, 979 F.2d at 991 (citing *Bell*, 441 U.S. at 537). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Bell*, 441 U.S. at 538-40. Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Id.* at 539.

The maintenance logs reflect that the broken light fixtures were replaced; cell toilets were unclogged; the "bug man" sprayed for insects; the air conditioning and roof were repaired; sinks were unclogged; the large crack in the concrete was sealed; and a faulty thermostat was replaced while the plaintiff was at the Spartanburg County Detention Center (doc. 56-6). Short-term exposure of inmates or pretrial detainees to unpleasant conditions, such as clogged toilets, is not a constitutional violation, particularly if the condition is fixed or repaired. *Booker v. Atkinson*, Civil Action No. 3:11-1651-RBH-JRM, 2011 WL 8193750, at *2–3 (D.S.C. Aug. 31, 2011) (collecting cases), *adopted by* 2012 WL 2712152 (D.S.C. July 9, 2012). *See Thompson v. Brown*, C.A. No. 3:11-318-TMC-JRM, 2011 WL 6012592, at *1–2 (D.S.C. Nov. 8, 2011) (rejecting conditions of confinement claim where the plaintiff claimed "his mattress and blanket were confiscated for six days, he was not allowed to have any toilet tissue for six days, his clothes were taken away from him for six days, his cell was cold, he had no running water in his cell, and he was forced to sleep on a steel cot for six days"), *adopted by* 2011 WL 6012550 (D.S.C. Dec. 2, 2011).

The actual grievance form used by the Spartanburg County Detention Center appears several times in the plaintiff's exhibits (doc. 89-17). Significantly, it does not appear that the plaintiff filed any grievances relating to the leaking water until September 2012—after his slip and fall (doc. 89-17 at 2–6). The plaintiff indicates that the needed repairs were made after his slip and fall. Verbal complaints to staff do not constitute exhaustion of a grievance procedure. *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006) (Prison Litigation Reform Act requires proper exhaustion of administrative remedies).

Based upon the foregoing, the undersigned recommends granting summary judgment on the plaintiff's conditions of confinement claims as they do not rise to the level of constitutional deprivations.

***Eleventh Amendment Immunity***

In their memorandum in support summary judgment, the defendants contend that Spartanburg County has Eleventh Amendment immunity (doc. 56-1 at 18). Spartanburg County does not have Eleventh Amendment immunity. *See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) ("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power."); and *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890) (holding the Eleventh Amendment inapplicable to a county).

Judge Cain's Order of June 5, 2014 (doc. 22), summarily dismissed Spartanburg County *without prejudice* because it did not operate the detention center or supervise courts in the State of South Carolina. Sheriff Wright, however, does have Eleventh Amendment immunity. *Comer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (". . . Sheriff Brown is an arm of the State."). Moreover, the other individual defendants, who are employees of the Spartanburg County Sheriff's Department, have Eleventh Amendment immunity for actions taken in their official capacities. *See Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 635 (D.S.C. 2010) (citing *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995)).

***Qualified Immunity***

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, the plaintiff's allegations pertaining to his criminal case are barred by the holding in *Heck v. Humphey*; his false arrest claims fail because he was arrested, twice, pursuant to arrest warrants signed by Magistrates; the broken items and conditions at the Spartanburg County Detention Center were repaired or fixed; and the plaintiff received prompt and adequate medical treatment while he was at the Spartanburg County Detention Center. Hence, since no constitutional rights were violated, all defendants are entitled to qualified immunity.

### *State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief construed by the court to be asserted pursuant to state law. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Tigrett v. Rector and Visitors of the Univ. of Virginia*, 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case); and 28 U.S.C. § 1367(c)(3).

**CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the District Court grant the defendants' motion for summary judgment (doc. 56) and deny the plaintiff's two motions to compel (docs. 98, 99). The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

January 20, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).